

Dean A. Christopherson, Esq. (SBN 121723)
**DAWE & CHRISTOPHERSON LLP**
1111 Civic Drive, Suite 380
Walnut Creek, CA 94596
Telephone: (925)256-6677
Facsimile: (925)256-6678
email: dac@calaw.com

Attorneys for Defendant HSBC Bank USA, as Trustee
   for Nomura Asset Acceptance Corporation Mortgage
   Pass Through Certificates Series 2005-AR6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL R. BERUBE,                         No. **C09-00127** JF

                    **Plaintiff,**          **NOTICE OF REMOVAL**

        vs.

**HSBC BANK USA, AS TRUSTEE FOR
NOMURA ASSET ACCEPTANCE
CORPORATION MORTGAGE
PASS THROUGH CERTIFICATES
SERIES 2005-AR6, ET AL.,**

                    **Defendants**
_____/

        PLEASE TAKE NOTICE that Defendant HSBC Bank USA, as Trustee for Nomura

Asset Acceptance Corporation Mortgage Pass Through Certificates Series 2005-AR6

("Defendant"), the only defendant in this action save those named as "Does 1 through 100",

removes this matter from the Superior Court of the State of California in and for the County of

Monterey under Case No. M94638 (the "State Court Action") to the above Court pursuant to 28

U.S.C. § 1441 (b) and 28 U.S.C. §1446.  Removal is proper for the following reasons:

        1.      On October 27, 2008, Plaintiff Michael R.  Berube ("Plaintiff") filed his

Complaint in the State Court Action and served Defendant with a copy of the Complaint on by

mail, which service was effective December 12, 2008.   True and correct copies of the Summons

and Complaint from the State Court Action are attached hereto as Exhibits A and B respectively.

        2.      In the Complaint, Plaintiff asserts "federal question" causes of action against

Defendant for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

1    §1961 et seq., alleging that Defendant "participated in a scheme of racketeering". Ex. B

2    (Complaint, ¶¶26 - 28).  Furthermore, Plaintiff has asserted claims under the Federal Unfair Debt

3    Collection Practices Act (15 U.S.C. §1692) and the Real Estate Settlement Procedures Act (12

4    U.S.C. §2601, et seq.), apparently asserting that Defendant undertook wrongful actions in

5    foreclosing on certain real property.  Ex. B (Complaint, ¶21).

6         3.    Accordingly, pursuant to 28 U.S.C. § 441(b) and 28 U.S.C. § 1331, this Court has

7    original jurisdiction over this matter because the Complaint on its face states federal questions

8    arising under the laws of the United States, specifically the RICO, Fair Debt Collection and

9    RESPA claims referenced above..

10        4.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over

11   Plaintiff's remaining state law claims: an unnamed first cause of action which appears to be

12   wrongful foreclosure, violation of the California Unfair Debt Collection Practices Act (Civil

13   Code Section 1788 et seq,.)  and a claim for "predatory lending" practices.

14        5.    Pursuant to 28 U.S.C. § 1446(d), written notice of filing of this Notice of

15   Removal will be served promptly on all parties, and a copy of the Notice of Removal shall be

16   filed promptly with the Superior Court for the State of California in and for the County of

17   Monterey, where this action was pending prior to this removal.

18                                DAWE & CHRISTOPHERSON LLP

19

20   Dated:  January 12, 2009

21                                Dean A. Christopherson
                                  Counsel for HSBC Bank USA, as Trustee for Nomura
22                                Asset Acceptance Corporation Mortgage Pass Through
                                  Certificates Series 2005-AR6

23

24

25

26

27

28

Notice of Removal

# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

HSBC BANK USA, N.A. AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION MORTGAGE
PASS THROUGH CERTIFICATES SERIES 2005-AR6, and

DOES 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Michael R. Berube

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

# FILED

OCT 2 7 2008

CONNIE MAZZEI
CLERK OF THE SUPERIOR COURT
_____DEPUTY

M.C. GILBERT

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.   There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.   If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.   Una carta o una llamada telefónica no lo protegen.   Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.   Es posible que haya un formulario que usted pueda usar para su respuesta.   Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.   Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.   Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales.   Es recomendable que llame a un abogado inmediatamente.   Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.   Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.   Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | Monterey County Superior Court<br>1200 Aguajito Road<br>Monterey, CA 93940 |

**CASE NUMBER:**
*(Número del Caso):* **M 9 4 6 3 8**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Michael R. Berube
P.O. Box 356
Carmel Valley, CA  93924

(831) 659-5476

DATE:
*(Fecha)* **OCT 2 7 2008**    **CONNIE MAZZEI**   Clerk, by _____, Deputy
                                                    (Secretario)    **M.C. GILBERT**    (Adjunto)

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: HSBC Bank USA N.A. as Trustee for Nomura Asset Acceptance Corporation Mortgage Pass through Certificates 2005-AR6

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☒ other *(specify)*: unknown business entity
4. ☒ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

# EXHIBIT B

1  Michael R. Berube, In Pro Per

2  P.O. Box 356

3  Carmel Valley, CA 93924

4  (831) 659-5476

# FILED

OCT 2 7 2008

CONNIE MAZZEI
CLERK OF THE SUPERIOR COURT
_____DEPUTY

## M.C. GILBERT

6  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7  **FOR THE COUNTY OF MONTEREY**

| | |
|---|---|
| 10  MICHAEL R. BERUBE | CASE NO.: **M9 4 6 3 8** |
| 11    Plaintiff, | VERIFIED COMPLAINT FOR |
| 12    v. | DECLARATORY RELIEF AND |
| 13  HSBC BANK USA, N.A. AS TRUSTEE FOR | TO QUIET TITLE AND FOR |
| 14  NOMURA ASSET ACCEPTANCE CORPORATION | MONEY DAMAGES |
| 15  MORTGAGE PASS THROUGH CERTIFICATES | |
| 16  SERIES 2005-AR6, and DOES 1-100, | [Unlimited Jurisdiction Case] |
| 17    Defendants. | |

20  **AS TO ALL CAUSES OF ACTION**

22    1. Plaintiff, MICHAEL R. BERUBE, is a natural person.

24    2. Defendant, HSBC BANK USA, N.A. AS TRUSTEE FOR NOMURA ASSET

25  ACCEPTANCE CORPORATION MORTGAGE PASS THROUGH CERTIFICATES 2005-

26  AR6 (hereinafter "HSBC"), is a business entity that has directed the Trustee in a non-judicial

27  foreclosure proceeding to proceed under a power of sale to foreclose a noted secured against the

28  property a 54 Southbank Road, Carmel Valley, CA 93924 (hereinafter "the subject property").

1  A true and correct copy of the legal description of said property is attached hereto as Exhibit 1.

3     3. Plaintiff is informed and believes, and thereupon alleges that Defendant, HSBC
4  purchased the subject property at a foreclosure sale conducted on or about Tuesday, April 15,
5  2008.

7     4. DOES 1-100 persons or entities that are unknown to Plaintiff.  Their capacities are
8  unknown.  Plaintiff alleges that they are in some way involved in the actions complained of
9  herein as either independent actors, or as agents or principals of the other named defendants.
10  Plaintiff will amend this complaint to allege their true identities, capacities and roles as and
11  when they are ascertained.

13     5. Plaintiff is informed and believes, and thereupon alleges, that Defendants, HSBC,
14  and DOES 1-100 have conducted a Trustee's sale of the subject property ostensibly to collect
15  the unpaid balance on the note secured by the DEED OF TRUST that is recorded on July 11,
16  2005 as Instrument No. 2005069895 of official records in the Office of the Recorder of
17  Monterey County, California (hereinafter the "security instrument").  A true and correct copy
18  of the security instrument is attached hereto as Exhibit 2.

20     6. Plaintiff was the owner in fee of the real property identified as 54 Southbank Road,
21  Carmel Valley, California 93924 prior to the sale identified herein.

23     7. Upon information and belief, HSBC is not and was not the holder of the note,
24  payment of which was secured by the security instrument, nor is it or was it possession of the
25  note properly endorsed to it, nor was it or is it otherwise entitled by law in this State to initiate
26  foreclosure under the security instrument.

28     8. HSBC has and had no right to initiate foreclosure under the security instrument, nor

2

1  did it have the right to direct the Trustee to foreclose and sell the subject real property owned

2  by Plaintiff. HSBC knew or reasonably should have known that it had no right to foreclose the

3  security instrument unless and until it actually has in its possession the original note properly

4  endorsed to it or assigned to it as of a date preceding the NOTICE OF DEFAULT recorded by

5  the Trustee on October 5, 2008 as Instrument No. 2007075923 of the official records of the

6  Office of the Recorder of Monterey County, California. A true and correct copy of the NOTICE

7  OF DEFAULT is attached hereto as Exhibit 3.

8

9      9. HSBC was assigned all beneficial interest under the security instrument, together with

10  the note by an ASSIGNMENT OF DEED OF TRUST which was recorded on October 19, 2007

11  as Instrument No. 2007080498 of the official records of the Office of the Recorder of Monterey

12  County, California. A true and correct copy of said ASSIGNMENT OF DEED OF TRUST is

13  attached hereto as Exhibit 4.

14

15      10. Exhibit 3 was unlawfully recorded in that, HSBC executed a SUBSTITUTION OF

16  TRUSTEE on November 19, 2007 and recorded same on November 29, 2007, a date after the

17  record date of the NOTICE OF DEFAULT rendering that notice of no force and effect since

18  the putative trustee lacked power or authority to record same on October 5, 2007. A true and

19  correct copy of the SUBSTITUTION OF TRUSTEE recorded as Instrument No. 2007089362

20  of the official records of the Office of the Recorder of Monterey County, California is attached

21  hereto as Exhibit 5.

22

23      11. Plaintiff alleges that the Defendants and each of them, in so acting in this case and

24  with respect to many other mortgage or trust deed security instruments engage in a pattern and

25  practice of utilizing the non-judicial foreclosure procedures of this State to foreclose on

26  properties when they do not, in fact, have the right to do so, knowing that the property owners

27  affected do not have the knowledge and means to contest the right of said Defendants to do so.

28

3

12. Plaintiff by this pleading demands further a detailed accounting of how the amount stated in the NOTICE OF DEFAULT and NOTICE OF TRUSTEE SALE necessary to be paid to redeem the property from foreclosure has been calculated so that Plaintiff can adequately evaluate Plaintiffs rights under the law with Plaintiffs presale rights of reinstatement and redemption.

13. The subject property is unique. Therefore, Plaintiff will suffer irreparable injury for which there is no adequate remedy in law when Defendants proceed to sell the subject property to a third party who would be a bonafide purchaser for value.

14. In all of the wrongful acts alleged in this complaint, the Defendants and each of them have utilized the United State Postal Service in furtherance of their pattern of conduct to unlawfully collect on negotiable instruments when they were not entitled to do so, and, assuming *arguendo* that they do have the right to proceed to foreclose on the note, to profit from those actions in amounts greater than their rights under the note to do so.

15. Defendants, and each of them, in committing the acts alleged in this and in other cases are engaging in a pattern of unlawful activity.

16. As a result thereof, Plaintiff has been damaged in having to hire attorneys before bringing this action, and has had to and will have to incur attorneys fees to stop the wrongful acts of the Defendants and each of them. Plaintiff has been damaged in other ways that are not readily apparent at this time, but will amend this complaint to allege further damages as they are determined.

17. In pursuing non-judicial foreclosure, Defendants, and each of them represented that they had the right to payment under the note, payment of which was secured by the security agreement.

4

18. The true facts were that they were not in possession of the note and they were not either holders of the note or non-holders of the note entitled to payment, as those terms are used in Commercial Code Sections 3301 and 3309, and therefore they were proceeding to foreclose non-judicially without right under the law.  Further, they added costs and charges to the payoff amount of the note that were not justified and proper under the terms of the note or the law.

19. The Defendants, and each of them, misrepresented the facts intending to either force Plaintiff to pay large sums of money to Defendants and each of them to which they were not entitled under the law, or to abandon Plaintiffs property to foreclosure sale.

## SECOND CAUSE OF ACTION
## UNFAIR DEBT COLLECTION PRACTICES

20. Plaintiff realleges paragraphs 1-19 as if fully set forth herein.

21. Plaintiff is informed and believes and thereupon alleges that the Defendants, and each of them, in taking the actions aforementioned, have violated provisions of California's Rosenthal Fair Debt Collection Practices Act, including but not limited to Civil Code Section 1788(e) and (f), and the Federal Fair Debt Collections Act, 15 U.S.C., Title 41, Subchap. V, Section 1692 *et seq*, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. Sections 2601-2617.

## THIRD CAUSE OF ACTION
## PREDATORY LENDING PRACTICES

22. Plaintiff realleges paragraphs 1-21 as if fully set forth herein.

5

23. Assuming *arguendo* that Defendant, HSBC does have the right under the law of negotiable instruments in this State, by endorsement, assignment, agency or otherwise, to receive payment under a valid note, payment of which was secured by the security instrument, and to initiate foreclosure under a power of sale contained therein, if any, then Defendant, HSBC is subject to defenses that would have been available against ALLIANCE BANCORP, the initial Lender identified in the security instrument.

24. ALLIANCE BANCORP, has engaged in predatory lending practices with respect to Plaintiff, the specifics of which are unknown, but which are subject to discovery and with respect to which the specifics will be alleged by amendment to this complaint when ascertained.

25. One or more predatory lending practices referred to in the previous paragraph permits, under the law, one or more defenses or remedies, the specifics of which will be alleged by amendment to this complaint when ascertained.

## FOURTH CAUSE OF ACTION
## RICO

26. Plaintiff realleges paragraphs 1-25 as if fully set forth hereat.

27. In doing the aforesaid acts, Defendants and each of them were participating in and have participated in a scheme of racketeering as that term is defined in RICO, 18 U.S.C. Sections 1961 *et seq.*

28. Plaintiff is therefore entitled to the remedies available under RICO in civil actions.

WHEREFORE, Plaintiff prays judgement against Defendants, and each of them as follows:

6

1      1. Defendants, HSBC, and DOES 1-100, and each of them, be required to deed back

2    to the Plaintiff the subject real property,

3

4      2. For a Decree quieting title in Plaintiff,

5

6      3. That Plaintiff be awarded monetary damages against the Defendants, HSBC, and

7    each of them, jointly and severally, that Plaintiff incurred due to the need to bring this action

8    according to proof,

9

10      4. That Plaintiff be awarded statutory damages for the Unfair Debt Collection practices

11    under the federal and California statutes,

12

13      5. That attorneys fees be awarded Plaintiff as may be permitted by law,

14

15      6. That Plaintiff be awarded treble damages as permitted by law,

16

17      7. That prejudgement interest be awarded Plaintiff as permitted by law,

18

19      8. For such other and further equitable relief, declaratory relief and legal damages as

20    may be permitted by law and as the court may consider just and proper.

21

22

23

24

25    Dated: October 27, 2008            *Michael R. Berube*

26                                          Michael R. Berube

27

28

# VERIFICATION

I am a plaintiff in this action.   I declare under penalty of perjury that I know the hereinabove alleged of my own knowledge except as to those things alleged on information and belief and as to those things, I believe them to be true.

I executed this declaration on the 27th day of October, 2008 at Monterey, California.

_Michael R. Berube_

Michael R. Berube

8

# EXHIBIT 1

DESCRIPTION:

THE REAL PROPERTY IN CITY OF CARMEL VALLEY, COUNTY OF MONTEREY, STATE OF CALIFORNIA, DESCRIBED AS:

LOT "U" AS SAID LOT IS SHOWN ON THAT CERTAIN MAP ENTITLED, MAP OF "ROBLES DEL RIO CARMELO SUB ). NO. 3", MONTEREY COUNTY, CALIFORNIA, FILED FOR RECORD JUNE 7, 1932 IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF MONTEREY, STATE OF CALIFORNIA, IN VOLUME 3 OF MAPS, "CITIES AND TOWNS", AT PAGE 87.

APN: 189-501-020

# EXHIBIT  2

esc # 1135354?

Stephen L. Vagnini
Monterey County Recorder
Recorded at the request of
Filer

CRLISA
7/11/2005
13:34:15

Recording Requested By:
ALLIANCE BANCORP

DOCUMENT: 2005069895

Titles: 1/ Pages: 25
Fees.... 80.00
Taxes...
Other...
AMT PAID   $80.00

And After Recording Return To:
ALLIANCE BANCORP
91 WESTBOROUGH BOULEVARD
SOUTH SAN FRANCISCO, CALIFORNIA 94080
Loan Number: 94666

----------------- [Space Above This Line For Recording Data] -----------------

# DEED OF TRUST

MIN: 1000393-0200594666-3

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JUNE 29, 2005 , together with all Riders to this document.
(B) "Borrower" is MICHAEL R. BERUBE, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
(C) "Lender" is ALLIANCE BANCORP

Lender is a CALIFORNIA CORPORATION                                                organized
and existing under the laws of CALIFORNIA
Lender's address is 91 WESTBOROUGH BOULEVARD, SOUTH SAN FRANCISCO,
CALIFORNIA 94080

(D) "Trustee" is LENDERS CHOICE TITLE
3850 ROYAL AVENUE, SIMI VALLEY, CALIFORNIA 95008

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated JUNE 29, 2005
The Note states that Borrower owes Lender FIVE HUNDRED THIRTY-SIX THOUSAND TWO HUNDRED FIFTY AND 00/100        Dollars (U.S. $ 536,250.00        ) plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 1 of 14                  DocMagic eForms 800-649-1362
www.docmagic.com

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
JULY 1, 2035 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | INTEREST ONLY ADDENDUM TO RIDER, ADDENDUM TO ADJUSTABLE RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of            MONTEREY            :

[Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 189-501-020

which currently has the address of  54  SOUTHBANK  ROAD
                                        [Street]

CARMEL  VALLEY                    , California  93924      ("Property Address"):
      [City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be
covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling
this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.  Borrower shall
pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late
charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due
under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in
one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured
by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return
any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender
may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights
hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   Application of Payments or Proceeds.   Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   Funds for Escrow Items.   Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                          Page 6 of 14                                    DocMagic eFormss 800-649-1362
                                                                                                        www.docmagic.com

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                          Page 8 of 14                    DocMagic eForms  800-649-1362
                                                                                          www.docmagic.com

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

)                                          )

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23.  Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24.  Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25.  Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)   _____ (Seal)
MICHAEL R. BERUBE         -Borrower                          -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                          -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                          -Borrower

Witness:                          Witness:

_____           _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 13 of 14

DocMagic ℮Forms 800-649-1362
www.docmagic.com

)                                    )

State of California          _Santa Clara_     )
County of _MONTEREY_                            ) ss.

On  6/30/06              before me,   Sharon R. Maxwell

personally appeared  MICHAEL R. BERUBE

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



SHARON R. MAXWELL
COMM. #1413039
Notary Public-California
SANTA CLARA COUNTY
My Comm. Exp. April 22, 2007

NOTARY SIGNATURE

Sharon R. Maxwell
(Typed Name of Notary)

NOTARY SEAL

EXHIBIT  **3**

Recording requested by:
**LANDAMERICA DEFAULT SERVICES -**
**California**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**

DFF20070134009979

Stephen L. Vagnini
Monterey County Recorder
Recorded at the request of
**Filer**

RANJELIQUE
10/05/2007
11:25:54

DOCUMENT: **2007075923**

| Titles: 1/ | Pages: 2 |
| --- | --- |
| Fees | 11.00 |
| Taxes | |
| Other | |
| AMT PAID | $11.00 |

Space above this line for Recorder's use only

Trustee Sale No. : 20070134009979          Title Order No.: 30090486

IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS**
**IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good
standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement
of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until
three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is **$11,584.77** as of 10/5/2007 and will increase until your account becomes current.   While your property is in
foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.   If
you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as
required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your
account in good standing.   In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide
reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.   You
may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts
in default at the time payment is made.   However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time
the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide
additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to
cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon
or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of
your property by paying the entire amount demanded by your creditor.

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20070134009979          Title Order No.: 30090486

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**AMERICA'S SERVICING COMPANY**
**c/o NDEx West, LLC**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** NDEx West, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 06/29/2005, executed by MICHAEL R BERUBE, as Trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. (MERS), as Beneficiary Recorded on 07/11/2005 as Instrument No. 2005069895 of official records in the Office of the Recorder of MONTEREY County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $536,250.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 7/1/2007 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.**

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 10/5/2007

NDEx West, LLC as Agent for Beneficiary
By: LANDAMERICA DEFAULT SERVICES - California, authorized agent  by SPL-inc agent

By: _____
        Khenchbish Zotjargal .

END OF DOCUMENT

EXHIBIT   4

C

Recording requested by:
**LANDAMERICA DEFAULT SERVICES -
California**

When Recorded Mail To:
**NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013**

Stephen L. Vagnini        CRLUCY
Monterey County Recorder  10/19/2007
Recorded at the request of 11:26:44
**Filer**

| DOCUMENT: **2007080498** | Titles 1/ Pages 1 | |
|---|---|---|
| | Fees | 8.00 |
| | Taxes | |
| | Other | |
| | AMT PAID | $8.00 |

ASSG20070134009979

Space above this line for Recorder's use only

Trustee Sale No. : 20070134009979    Title Order No.: 30090486

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC BANK USA, N.A. AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION MORTGAGE PASS THROUGH CERTIFICATES SERIES 2005-AR6 all beneficial interest under that certain Deed of Trust dated 06/29/2005, executed by MICHAEL R BERUBE, as Trustor to LENDERS CHOICE TITLE, Trustee, and Recorded on 07/11/2005 as Instrument No. 2005069895 of Official Records in the County Recorder's office of MONTEREY County, California. Describing land therein as:
**AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE**

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated

_10/16/07_

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR LENDER AND LENDERS
SUCCESSORS AND ASSIGNS

Stephen C. Porter
Assistant Secretary

State of _____**TEXAS**_____ }
County of _____**Dallas**_____ }

On _10/16/07_ before me, Donna G. Workman Notary Public, personally appeared Stephen C. Porter personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____ (Seal)

My commission expires: _9/30/11_

DONNA G. WORKMAN
Notary Public
State of Texas
My Comm. Exp. 09-30-2011

## END OF DOCUMENT

# EXHIBIT   5

Recording requested by:
**LANDAMERICA DEFAULT SERVICES -**
California

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

**\* SUB200701340**
SUB20070134009979

Stephen L. Vagnini                CRMELISSA
Monterey County Recorder          11/29/2007
Recorded at the request of        10:54:37
**Filer**

**DOCUMENT: 2007089362** | Titles: 1/ Pages: 2

Fees          11.00
Taxes
Other
AMT PAID      $11.00

Space above this line for Recorder's use only

Trustee Sale No. : 20070134009979  Title Order No.: 30090486

# SUBSTITUTION OF TRUSTEE

WHEREAS, **MICHAEL R BERUBE** was the original Trustor, **LENDERS CHOICE TITLE** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. (MERS)** was the original Beneficiary **Recorded** on 07/11/2005 as Instrument No. 2005069895 of official records in the Office of the Recorder of MONTEREY County, California, as more fully described on said Deed of Trust.; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes, **NDEx West, L.L.C., WHOSE ADDRESS IS:  15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED: 11-19-07

HSBC BANK USA, N.A. AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION MORTGAGE PASS THROUGH CERTIFICATES SERIES 2005-AR6 By its attorney in fact Wells Fargo Bank, N.A.

_____

Jamie Padmore, Vice President Loan Documentation

State of _____South Carolina_____ )
County of ____York_____ )

On ____11-19-07_____ before me, _____Pamela K. Fetner_____ Notary Public, personally appeared ___Jamie Padmore____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____(Seal)

My commission expires: _____

**OFFICIAL SEAL**
Notary Public
State of South Carolina
**PAMELA K. FETNER**
My Commission Expires Feb 18, 2015

FCUS_SubstituteOfTrustee.rpt - 06/06/2007 - Ver-22                                    Page 1 of 1

<u>PROOF OF SERVICE</u>
(C.C.P. §1013A (3))

STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA

I am employed in the County of Contra Costa, State of California.  I am over the age of eighteen (18) and not a party to the within action; my business address is: 1111 Civic Drive, Suite 380, Walnut Creek, CA 94596

On January 12, 2009, I served the following document(s) described as:

**NOTICE OF REMOVAL** [District Court Notice]

in this action by placing the true copy thereof enclosed in a sealed envelope addressed as follows:

Michael R.  Berube
P.O. Box 356
Carmel Valley, CA 93924

BY MAIL As follows:

     I am "readily familiar" with the firm's practice of collection and processing
     correspondence for mailing.  Under that practice it would be deposited with U.S.
     postal service on that same day with postage thereon fully prepaid at Walnut
     Creek, California in the ordinary course of business.  I am aware that on motion of
     the party served, service is presumed invalid if postal cancellation date or postage
     meter date is more than one day after date of deposit for mailing in affidavit.

     Executed on January 12, 2009, at Walnut Creek, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Dean A. Christopherson